UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROBERT DOYLE,

    Plaintiff,                                  Hon. Richard Alan Enslen

v.                                              Case No. 1:06 CV 628
                                                  Member Case No. 1:06 CV 630

KURT JONES, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Rule 56(b) Motion for Summary Judgment. (Dkt. #36). Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court recommends that Defendants' motion be **granted** and Plaintiff's action **dismissed**.

## BACKGROUND

Plaintiff initiated two separate actions regarding several alleged encounters with prison officials between January 2005 and January 2006. These incidents all relate to alleged difficulties Plaintiff experienced regarding his inability to hear and his attempts to receive accommodation for such. On March 1, 2007, the Court entered an Order consolidating these two actions. The following allegations are contained in Plaintiff's two complaints and incorporated attachments thereto.

Plaintiff, who is hearing impaired, is unable to hear announcements broadcast over the prison's public address system. As a result, Plaintiff often missed meals, medication and property

callouts, as well as opportunities to visit the law library. After filing a grievance on the matter, Defendant Shafer instructed unit staff to awaken Plaintiff every morning. Defendant Shafer, however, failed to instructed staff regarding the manner by which Plaintiff should be awakened each morning.

Prison officials, rather than waking Plaintiff at 8:00 a.m. as he requested, attempted to awaken Plaintiff between 5:30 a.m. and 6:00 a.m. as instructed by Defendant Baker. Prison officials informed Plaintiff that because of the increased amount of activity taking place at 8:00 a.m. they had to wake him up much earlier than he preferred. Furthermore, prison officials, rather than entering Plaintiff's cell and tapping Plaintiff on the shoulder or tapping his bed as requested, simply yelled into Plaintiff's cell waking Plaintiff's cellmate. This angered Plaintiff's cellmate, who threatened to attack Plaintiff if these early morning interruptions continued.

Sometime in July 2005, Plaintiff complained to Defendants Baker and Dunigan about the threat to his safety this situation was creating. Defendants Baker and Dunigan informed Plaintiff that prison officials would not modify the manner by which they attempted to awaken him. Plaintiff asserts that this behavior violated the Americans with Disabilities Act (ADA).

On July 30, 2005, Defendant Bellant "repeated[ly] struck Plaintiff with a broomstick on the arm and leg until he woke up." This assault caused Plaintiff to suffer bruises, welts, and splinters. Plaintiff asserts that Defendant Bellant's actions constitute improper retaliation. The Court further interprets this claim as asserting a violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.

On August 3, 2005, Plaintiff approached Defendant Clark and requested permission to "get his legal material for his legal writer." Defendant Clark responded by making "several comments about [Plaintiff's] deafness in a derogatory fashion." Clark told Plaintiff that he was "faking" his

deafness and that "it's really amazing how you can hear when you want." Plaintiff asserts that Defendant Clark's actions constitute harassment in violation of the Eighth Amendment, violate the ADA, and were undertaken for retaliatory motives.

On the morning of August 4, 2005, Defendant Bellant awoke Plaintiff by throwing full rolls of toilet paper at him, at least one of which struck Plaintiff "in the neck and chin." On the mornings of August 5, 2005, and August 6, 2005, Defendant Bellant awoke Plaintiff by "forcefully" striking him in the legs with a broomstick, while another unidentified prison official "threw unopened rolls of toilet tissue at his face." Plaintiff asserts that Defendant Bellant's actions constitute cruel and unusual punishment in violation of the Eighth Amendment. Plaintiff claims that in response for reporting this alleged misconduct to the Michigan State Police he was subjected to illegal retaliation. Specifically, Plaintiff asserts that he was improperly held in administrative segregation and placed in a higher security classification. Plaintiff asserts that Defendants Christiansen and Trierweiler were responsible for increasing his security classification. However, Plaintiff has failed to identify any individual who was allegedly responsible for placing him in segregation. Plaintiff also asserts that Defendants Jones, Trierweiler, Christiansen, and Purchase "conspired to cover up the assaults."

On August 6, 2005, Plaintiff was attempting to "get hot water." Defendant Donahue informed Plaintiff that hot water was a privilege to which he was not presently entitled. Defendant Schafer than "stepped into the middle of the conversation" and began "mocking [Plainitff] by putting his hand[s] over his ears" and pretending to be deaf. Defendants Baker and Dunigan also began mocking Plaintiff. Plaintiff asserts that the comments by Defendants Schafer, Baker, and Dunigan constitute illegal harassment. The Court has interpreted Plaintiff's claim against Defendant Donahue as asserting an Eighth Amendment claim for deprivation of hot water.

On August 16, 2005, Plaintiff asked Defendant Dunigan to call Defendant Christiansen, whom Plaintiff had been instructed to contact if he experienced difficulty "asserting his A.D.A. rights." Defendant Dunigan refused Plaintiff's request in violation of his rights under the ADA. Later that day, Defendant Nelson "rushed" at Plaintiff and told him "listen motherfucker, don't you ever come around me again or you're gonna get fucked up." Plaintiff asserts that Defendant Nelson's behavior constitutes improper harassment.

On August 17, 2005, Plaintiff was conversing with Officer Cook when Defendant Maiga approached and told Plaintiff that he was not supposed to be speaking with Cook. Plaintiff responded by informing Maiga that Cook had initiated the conversation. Maiga then "raised his finger in Plaintiff's face and said, 'Go!'" Defendant Maiga then "started acting like a five year old child stumping (sic) and pouting away." Plaintiff asserts that Defendant Maiga's behavior constitutes improper harassment.

On August 23, 2005, Plaintiff met with Defendant Baker to review a grievance Plaintiff had initiated against her. Plaintiff declined to "sign off" the grievance and, furthermore, told Baker that he was going to write another grievance against her "because she reviewed the grievance [he] wrote on her." Defendant Baker then told Plaintiff that while he was going to do what he had to do, she was likewise going to do what she had to do. Plaintiff asked if that meant he would subject to "more harassment," to which Baker responded, "you'll see." Plaintiff asserts that Defendant Baker's actions constitute "a threat for more harassment from her in the future."

Plaintiff next alleges that on or about August 29, 2005, his security classification was raised from level II to level IV. Prison officials informed Plaintiff that this action was taken because their investigation into his numerous allegations "warrants increased custody placement." Plaintiff

asserts that Defendants Trierweiler and Christiansen increased Plaintiff's security level in retaliation for his having written numerous grievances against prison officials.

Finally, Plaintiff claims that because he feared for his safety he made numerous requests to be transferred to another facility within the Michigan Department of Corrections (MDOC). (Dkt. #1 at ¶¶ 11-12; Dkt. #1, Exhibits K and L). Plaintiff asserts that Defendants Jones, Trierweiler and Christiansen refused his transfer requests as retaliation for writing numerous grievances against staff members. *Id.*

Plaintiff is seeking $10,000 in damages from each Defendant. Plaintiff also requests that he be transferred to another facility and that Defendants be ordered to "develop a new procedure for waking up deaf prisoners." Defendants Jones, Fuqua, Schafer (Donna), Dunigan (James), Baker, Bellant, Purchase, Schafer (Timothy), Maiga, Trierweiler, Christiansen, Duncan, Clark, Donahue, and Dunigan (Jim) have moved for summary judgment. For the reasons articulated below, the Court recommends that Defendants' motion be granted and Plaintiff's claims against them be dismissed. The Court further recommends that Plaintiff's claims against Defendants Hanes, Golit, and "Unknown Officer" be dismissed for failure to timely effect service.

## SUMMARY JUDGMENT STANDARD

In reviewing a motion for summary judgment, the Court must confine itself to the narrow questions of whether there exist "no genuine issue[s] as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a Rule 56 motion, the Court cannot try issues of fact, but is empowered to determine only whether there exist issues in dispute to be decided in a trial on the merits. *See Perez v. Aetna Insurance Co.*, 96 F.3d 813, 819 (6th Cir. 1996);

*Aiken v. The City of Memphis*, 37 F.3d 1155, 1161 (6th Cir. 1994).  The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see also*, *Terry Barr Sales Agency v. All-Lock Co. Inc.*, 96 F.3d 813, 819 (6th Cir. 1996) (citing *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989)).

A motion for summary judgment requires the Court to view "inferences to be drawn from the underlying facts…in the light most favorable to the party opposing the motion." *Matsushita Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also*, *Terry Barr Sales Agency*, 96 F.3d at 819; *Schaffer v. A.O. Smith Harvestore Products, Inc.*, 74 F.3d 722, 727 (6th Cir. 1996).  The opponent, however, has the burden to show that a "rational trier of fact [could] find for the non-moving party [or] that there is a 'genuine issue for trial.'" *Historic Preservation Guild of Bay View v. Burnley*, 896 F.2d 985, 993 (6th Cir. 1989) (quoting *Matsushita Electric Ind. Co.*, 475 U.S. at 587); *see also*, *Schaffer*, 74 F.3d at 727.

As the Sixth Circuit has recognized, the Supreme Court has encouraged the granting of summary judgments, as such may be "an appropriate avenue for the 'just, speedy and inexpensive determination' of a matter." *Kutrom v. City of Center Line*, 979 F.2d 1171, 1173 (6th Cir. 1992). Consistent with this concern for judicial economy, "the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient." *Anderson*, 477 U.S. at 252; *see also Bailey v. Floyd Board of Education*, 106 F.3d 135, 140 (6th Cir. 1997).  Furthermore, mere allegations do not suffice.  *See Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989) ("the party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact").

**I.        Exhaustion**

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 127 S.Ct. 910, 921 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.*

With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 126 S.Ct. 2378, 2386-87 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 127 S.Ct. at 922-23.

Plaintiff included with his two complaints copies of numerous grievances he allegedly pursued before initiating the present action. The allegations asserted in these particular grievances sufficiently informed prison officials as to the claims subsequently asserted in Plaintiff's two complaints. The question, therefore, is not whether Plaintiff's grievances parallel the claims in his complaint, but whether such grievances have been properly exhausted. Defendants concede that several of Plaintiff's grievances have been properly exhausted, but assert that the remaining grievances were not exhausted in conformity with the relevant MDOC regulations. The Court disagrees.

      A.      Case Number 1:06-cv-628

Of the twelve grievances attached to this complaint, Defendants concede that the following have been properly exhausted: (1) DRF-05-08-01146-17a; (2) DRF-05-08-01149-18a; (3) DRF-05-08-01204-17a; and (4) DRF-05-08-01226-11h. Defendants have presented neither argument nor evidence that the following three grievances have not been properly exhausted: (1) DRF-05-08-01195-26b; (2) DRF05-09-01274-21e; and (3) DRF-05-08-01177-22a. The Court concludes, therefore, that Defendants have failed to carry their burden of demonstrating lack of exhaustion with respect to these seven grievances.

Pursuant to MDOC policy, a prisoner grievance "shall be rejected" if it "raises issues that are duplicative of those raised in another grievance filed by the grievant." Michigan Department of Corrections Policy Directive 03.02.130 ¶ G. Defendants assert that the following grievances have not been properly exhausted because they were rejected as duplicative: (1) DRF-05-08-01142-28a; (2) DRF-05-12-01811-28a; (3) DRF05-12-01810-28a; (4) DRF06-01-00104-28a; (5) DRF-06-01-00046-28a. While these particular grievances were rejected as duplicative, Defendants have failed to demonstrate that the claims asserted therein have not been properly exhausted.

As noted above, a grievance is rejected as duplicative if it raises issues asserted in another grievance. Thus, while the aforementioned grievances were rejected as duplicative that very fact means that the claims asserted therein were advanced in another grievance. Defendants have not demonstrated that Plaintiff failed to properly exhaust these other grievances. Accordingly, the Court concludes that Defendants have failed to satisfy their burden of demonstrating that Plaintiff failed to properly exhaust these grievances and the claims asserted therein. In sum, the Court concludes that none of the claims asserted in this particular complaint should be dismissed for failure to exhaust administrative remedies.

      B.      Case Number 1:06-cv-630

Plaintiff included with this complaint copies of five grievances. Of these, Defendants concede that the following have been properly exhausted: (1) DRF-05-07-010118-18a; (2) DRF-05-08-01143-26a; and (3) DRF-05-08-01147-26.

The remaining two grievances were rejected as duplicative: (1) DRF-05-08-01148-28a; and (2) DRF-05-08-01223-28a. While these two grievances were rejected as duplicative, Defendants have failed to demonstrate that the claims asserted therein have not been properly exhausted. As noted above, the fact that these grievances were rejected as duplicative means that the claims asserted therein were asserted in another grievance. Defendants have not demonstrated that Plaintiff failed to properly exhaust these other grievances. Accordingly, the Court concludes that Defendants have failed to satisfy their burden of demonstrating that Plaintiff failed to properly exhaust these two grievances and the claims asserted therein. In sum, the Court concludes that none of the claims asserted in this particular complaint should be dismissed for failure to exhaust administrative remedies.

**II.**      **Claims Against Defendant Clark**

Plaintiff claims that when he asked Defendant Clark to retrieve his legal materials, Clark responded by accusing Plaintiff of "faking" his deafness. Plaintiff asserts that Defendant Clark's actions constitute harassment in violation of the Eighth Amendment, violate the ADA, and were undertaken for retaliatory motives.

      a.      Eighth Amendment

As the Sixth Circuit has repeatedly held, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (quoting *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987)). Accordingly, "harassment and verbal abuse" while perhaps unprofessional, "do not constitute the type of infliction of pain that the Eighth Amendment prohibits." *Johnson*, 357 F.3d at 546 (citing *Ivey*, 832 F.2d at 954-55). The Court recommends, therefore, that Defendant Clark be granted summary judgment as to Plaintiff's Eighth Amendment harassment claim.

      b.      ADA

Title II of the Americans with Disabilities Act (ADA) provides that "no qualified individual with a disability shall by reason of such disability be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Jones v. City of Monroe, Michigan*, 341 F.3d 474, 477 (6th Cir. 2003) (quoting 42 U.S.C. § 12132). The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices. . .meets the essential eligibility requirements for receipt of services or the participation in programs or activities provided by a public entity." *Jones*, 341 F.3d at 477 (quoting 42 U.S.C. § 12131).

As is well recognized, the ADA applies to state prisoners. *See McKinley v. Bowlen*, 2001 WL 493394 at *1 (6th Cir., May 1, 2001) (*citing Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998)). However, the ADA does not impose liability upon individuals. *See Lee v. Michigan Parole Board*, 2004 WL 1532563 at *1 (6th Cir., June 23, 2004); *VanderMolen v. City of Roosevelt*

*Park*, 1997 WL 853505 at *1 (W.D. Mich., Oct. 28, 1997) (Enslen, J.). Thus, Plaintiff may not maintain an action for damages against Defendant Clark. Accordingly, the Court recommends that Defendant Clark be granted summary judgment as to Plaintiff's ADA claim.

   c.  Retaliation

To establish that he was subjected to illegal retaliation, Plaintiff must establish that (1) he was engaged in protected conduct; (2) Defendant Clark took adverse action against him which would deter a person of ordinary firmness from continuing to engage in the protected conduct; and (3) that the adverse action was taken at least in part because of the protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). While there arguably exists questions of fact regarding the first and third elements of this standard, Defendant Clark's alleged comments are not sufficiently adverse to deter a person of ordinary firmness from engaging in protected conduct. *See, e.g., Reid v. Wakefield*, 2007 WL 954179 at *4 (W.D. Pa., Mar. 28, 2007); *Panton v. Boom*, 2007 WL 853848 at *2 (M.D. Pa., Mar. 20, 2007); *Alexander v. Forr*, 2006 WL 2796412 at *4 (M.D. Pa., Sep. 27, 2006). Accordingly, the Court recommends that Defendant Clark be granted summary judgment as to Plaintiff's retaliation claim.

**III.**  **Harassment Claims Against Defendants Schafer, Baker, Dunigan, and Maiga**

As described above, Plaintiff asserts that Defendants Schafer, Baker, and Dunigan mocked him by placing their hands over their ears and pretending to be deaf. Plaintiff also claims that Defendant Maiga shouted at him, after which he stomped and pouted "like a five year old child." Plaintiff asserts that this behavior constitutes illegal harassment. For the reasons articulated above, this

alleged behavior, while perhaps unprofessional, simply does not implicate the Eighth Amendment. The Court recommends, therefore, that Defendants Schafer, Baker, Dunigan, and Maiga be granted summary judgment as to Plaintiff's harassment claims.

**IV.     Eighth Amendment Claim Against Defendant Donahue**

Plaintiff asserts that on August 6, 2005, Defendant Donahue denied his request for hot water from the kitchen. The Court has interpreted this allegation as asserting a claim under the Eighth Amendment.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The analysis by which Defendant Donahue's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, Plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. If the objective test is met, the Court must then determine whether Defendant acted with a sufficiently culpable state of mind. *Id.*

With respect to the objective prong of the analysis, contemporary standards of decency determine whether conditions of confinement are cruel and unusual. *See Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Contemporary standards of decency are violated only by "extreme deprivations" which deprive the prisoner of the "minimal civilized measure of life's necessities." *Hadix*, 367 F.3d at 525 (quoting *Hudson v. McMillan*, 503 U.S. 1, 9 (1992)).

Defendant Donahue asserts that Plaintiff was not permitted to obtain hot water from the kitchen because he was on "Loss of Privileges" status. (Dkt. #37, Exhibit 27). Plaintiff does not dispute this assertion. There is neither argument nor evidence that Plaintiff was denied *drinking* water, only that he was denied *hot* water from the kitchen. Under the circumstances, denying Plaintiff's request for hot water did not deprive him of the "minimal civilized measure of life's necessities." Accordingly, the Court recommends that Defendant Donahue be granted summary judgment.

**V.         August 16, 2005 Incident Involving Defendant Dunigan and Defendant Nelson**

According to Plaintiff, on August 16, 2005, he asked Defendant Dunigan to call Defendant Christiansen, whom Plaintiff had been instructed to contact if he experienced difficulty "asserting his A.D.A. rights." Defendant Dunigan allegedly refused Plaintiff's request in violation of his rights under the ADA. Later that day, Defendant Nelson allegedly "rushed" at Plaintiff and told him "listen motherfucker, don't you ever come around me again or you're gonna get fucked up." Plaintiff asserts that Defendant Nelson's behavior constitutes improper harassment which the Court has interpreted as an Eighth Amendment claim.

As discussed above, the ADA does not impose liability upon individuals. Thus, Plaintiff may not maintain an action for damages against Defendant Dunigan. Accordingly, the Court recommends that Defendant Dunigan be granted summary judgment as to Plaintiff's ADA claim. As for Plaintiff's claim against Defendant Nelson, the Court recommends that such be dismissed for failure to timely effect service.

Federal Rule of Civil Procedure 4(c) indicates that "[a] summons must be served together with a copy of the complaint." The time frame within which service must be effected is articulated in

Rule 4(m), which provides that if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, "the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant." If the plaintiff demonstrates good cause for such failure, however, "the court shall extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m); *see also*, *Bush v. City of Zeeland*, 2003 WL 22097837 at *2 (6th Cir., Sep. 5, 2003) (citation omitted).

The present action (both the lead case and its member case) was initiated on September 1, 2006. On October 3, 2006, the Court directed that Plaintiff's complaint in the member case be served. On October 25, 2006, the Court directed that the complaint in the lead case be served. Service has not yet been effected on Defendant Nelson and Plaintiff has never requested assistance in effecting service on Defendant Nelson. Considering Plaintiff's lack of diligence in attempting to effect service on Defendant Nelson, the Court recommends that Plaintiff's claim against Defendant Nelson be dismissed without prejudice for failure to timely effect service.

**VI.        ADA Claims Against Defendants Baker and Dunigan**

As discussed above, Plaintiff alleges that prison officials initially attempted to awaken him in the mornings by yelling into his cell. This angered Plaintiff's cellmate, who allegedly threatened to assault Plaintiff if such continued. Plaintiff allegedly asked Defendants Baker and Dunigan to attempt to awaken him by a different method. Baker and Dunigan allegedly refused Plaintiff's request, which Plaintiff asserts constitutes a violation of the ADA. As discussed above, however, the ADA does not impose liability upon individuals. Thus, Plaintiff may not maintain an action for damages against

Defendants Baker and Dunigan. Accordingly, the Court recommends that Defendants Baker and Dunigan be granted summary judgment as to Plaintiff's ADA claims.

**VII.**     **August 23, 2005 Incident Involving Defendant Baker**

On August 23, 2005, Plaintiff allegedly met with Defendant Baker to review a grievance Plaintiff had initiated against her. Plaintiff declined to "sign off" the grievance and, furthermore, told Baker that he was going to write another grievance against her "because she reviewed the grievance [he] wrote on her." Defendant Baker then allegedly told Plaintiff that while he was going to do what he had to do, she was likewise going to do what she had to do. Plaintiff asked if that meant he would subject to "more harassment," to which Baker allegedly responded, "you'll see." Plaintiff asserts that Defendant Baker's actions constitute "a threat for more harassment from her in the future."

As discussed above, the United States Constitution does not guarantee to Plaintiff that his incarceration will be a pleasant experience. Rather, the Constitution forbids that Plaintiff be subjected to cruel and unusual punishment during his incarceration. Plaintiff's allegations, *at most*, demonstrate Defendant Baker's frustration with having to endure Plaintiff's seemingly endless barrage of repetitive grievances. While Defendant Baker could have perhaps managed this particular encounter more professionally, Plaintiff's allegations simply fail to implicate the Constitution. Accordingly, the Court recommends that Defendant Baker be granted summary judgment as to this claim.

**VIII.**     **Claims Against Defendant Bellant**

As detailed above, Plaintiff asserts that Defendant Bellant assaulted him on several occasions. Specifically, Plaintiff asserts that Bellant used a broomstick to wake him up on three separate

occasions between July 30, 2005 and August 6, 2005. Plaintiff also asserts that Bellant awoke him on the morning of August 4, 2005, by throwing toilet paper at him. Plaintiff claims that Defendant Bellant's alleged actions violate his Eighth Amendment right to be free from cruel and unusual punishment.

The Eighth Amendment, applicable to the states through the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishment." *See Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991). Not every governmental action affecting inmates, however, is subject to Eighth Amendment scrutiny. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986). As the Supreme Court has held, the Constitution does not prohibit "de minimis uses of physical force" so long as "the use of force is not of a sort repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992). Instead, only that conduct which subjects an inmate to the "unnecessary and wanton infliction of pain" is prohibited by the Eighth Amendment. *Id.* at 5-6. Accordingly, whenever prison officials are alleged to have employed excessive force, "the core judicial inquiry...is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6-7.

While not dispositive, the "absence of serious injury is relevant to the Eighth Amendment inquiry," as "de minimis injuries suggest de minimis use of force." *Owens v. Johnson*, 2000 WL 876766 at *2 (6th Cir., June 23, 2000) (citing *Hudson*, 503 U.S. at 8-9). In this respect, it is relevant that aside from Plaintiff's conclusory and unsubstantiated assertions, there exists no evidence that he suffered any injury. Defendants have submitted copies of Plaintiff's medical records for the time period from July 27, 2005, through August 15, 2005. (Dkt. #37, Exhibit 33). These records contain no evidence that Plaintiff suffered any injury as a result of being struck with a broomstick or toilet paper. In fact, Plaintiff's medical records contain no evidence that Plaintiff even complained of such injury or attack. *Id.* Plaintiff has submitted no *evidence* calling into question the completeness or veracity of these

medical records. Instead, Plaintiff has chosen to rely on the unsubstantiated assertions in his complaint. The Court concludes, therefore, that because Defendants have submitted unrefuted evidence that Plaintiff suffered at most de minimis injuries, Defendant Bellant is entitled to summary judgment.

**IX.**     **Conspiracy Claims**

Plaintiff asserts that Defendants Jones, Trierweiler, Christiansen, and Purchase entered into a conspiracy to "cover up" the alleged assaults perpetrated by Defendant Bellant. Under federal law, it is improper for "two or more persons" to conspire "for the purpose of depriving, either directly or indirectly," an individual of his civil rights. 42 U.S.C. § 1985. Plaintiff's claim must fail, however, because as noted above he cannot establish that the alleged conspiracy deprived him of a right or privilege protected by the laws or Constitution of the United States. *See Sawyer v. Lexington-Fayette Urban County Government*, 2001 WL 1006237 at *2 (6th Cir., Aug. 21, 2001) (citing *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996)).

**X.**     **Retaliation Claims Against Defendants Jones, Trierweiler and Christiansen**

As discussed above, Plaintiff claims that Defendant Bellant assaulted him on several occasions between July 30, 2005, and August 6, 2005. Plaintiff reported these incidents to the Michigan State Police, after which he was allegedly subjected to illegal retaliation. Specifically, Plaintiff asserts that he was improperly held in administrative segregation and placed in a higher security classification as retaliation for reporting Bellant's alleged misconduct. Plaintiff asserts that Defendants Christiansen and Trierweiler were responsible for increasing his security classification. Plaintiff has failed, however, to identify any individual who was allegedly responsible for placing him in segregation. Plaintiff also

claims that Defendants Jones, Trierweiler, and Christiansen refused his transfer requests as retaliation for writing grievances against staff members.

Defendants Christiansen and Trierweiler have submitted evidence that Plaintiff's security classification was increased because he was trying to recruit other inmates to participate in a plot against another prison official. (Dkt. #37, Exhibits 28 and 30). This evidence is supported by the results of an investigation conducted by prison officials, a copy of which Plaintiff submitted with his pleadings. (Dkt. #45, Exhibit C). Plaintiff has submitted no evidence suggesting otherwise. Plaintiff cannot, therefore, establish the requisite causal link between his protected conduct and the increase in his security classification. In other words, Plaintiff cannot establish that the increase in his security classification was motivated by the filing of his various grievances. Accordingly, the Court recommends that Defendants Christiansen and Trierweiler be granted summary judgment as to these claims.

As for Plaintiff's claim that Defendants Jones, Trierweiler, and Christiansen refused his transfer requests as retaliation for writing grievances against staff members, the result is the same. Even assuming that Plaintiff was engaged in (or seeking to engage in) protected conduct, he cannot satisfy the second or third prongs of the analysis.

First, Plaintiff cannot establish that he suffered an adverse action sufficient to deter a person of ordinary firmness from continuing to engage in protected conduct. It is well established that "a prisoner is expected to endure more than the average citizen and enjoys no protected right to remain incarcerated in a given correctional facility." *Hix v. Tennessee Department of Corrections*, 196 Fed. Appx. 350, 358 (6th Cir., Aug. 22, 2006). Thus, unless there exist "foreseeable consequences" to a transfer that would inhibit the prisoner's ability to engage in protected conduct, such a transfer does not constitute an "adverse action" for purposes of the retaliation analysis. *Hix*, 196 Fed. Appx. at 358 (citing

*Siggers-El v. Barlow*, 412 F.3d 693, 701-04 (6th Cir. 2005)). Logic dictates that if a transfer to another facility does not constitute an adverse action, the alleged failure to transfer a prisoner cannot qualify as an adverse action unless there exists evidence of "foreseeable consequences" that would result from the failure to transfer the prisoner. Plaintiff has submitted no *evidence* that the alleged refusal by Defendants to transfer him inhibited his ability to engage in protected conduct or otherwise placed him at risk.

With respect to the causation element, Defendants have submitted evidence that Plaintiff's requests to be transferred were denied because the only other facility to which Plaintiff could be transferred (due to his hearing impairment) refused to accept Plaintiff due to his history of disruptive behavior. (Dkt. #37, Exhibits 28, 30). Plaintiff has submitted no evidence to the contrary and, therefore, cannot establish that the decision to deny his request for a transfer was motivated by any protected conduct in which he may have been engaged. Accordingly, the Court recommends that Defendants Jones, Trierweiler, and Christiansen be granted summary judgment as to this particular claim.

**XI.**     **Plaintiff's Claims against Defendants Hanes, Golit, and "Unknown Officer"**

Federal Rule of Civil Procedure 4(c) indicates that "[a] summons must be served together with a copy of the complaint." The time frame within which service must be effected is articulated in Rule 4(m), which provides that if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, "the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant." If the plaintiff demonstrates good cause for such failure, however, "the court shall extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m); *see also*, *Bush v. City of Zeeland*, 2003 WL 22097837 at *2 (6th Cir., Sep. 5, 2003) (citation omitted).

The present action (both the lead case and its member case) was initiated on September 1, 2006. On October 3, 2006, the Court directed that Plaintiff's complaint in the member case be served. On October 25, 2006, the Court directed that the complaint in the lead case be served. Service has not yet been effected on Defendants Hanes or Golit. Service has likewise never been effected on the "Unknown Officer" identified in the member case. Plaintiff has never requested assistance in effecting service on these Defendants. Considering Plaintiff's lack of diligence in attempting to effect service on these Defendants, the Court recommends that Plaintiff's claim against Defendants Hanes, Golit, and "Unknown Officer" be dismissed without prejudice for failure to timely effect service.

## CONCLUSION

For the reasons articulated herein, the Court recommends that <u>Defendants' Rule 56(b) Motion for Summary Judgment</u>, (dkt. #36), be **granted** and Plaintiff's action **dismissed**. The Court further recommends that Plaintiff's claims against Defendants Hanes, Golit, Nelson, and "Unknown Officer" be **dismissed without prejudice** for failure to timely effect service.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                            Respectfully submitted,

Date: August 8, 2007                              /s/ Ellen S. Carmody
                                            ELLEN S. CARMODY
                                            United States Magistrate Judge